Slip Op. 17-163

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHENYANG YUANDA ALUMINUM INDUSTRY ENGINEERING CO., YUANDA USA CORP., JANGHO CURTAIN WALL AMERICAS CO., PERMASTEELISA NORTH AMERICA CORP., PERMASTEELISA SOUTH CHINA FACTORY, AND PERMASTEELISA HONG KONG LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Consol. Court No. 14-00106 |

**OPINION**

[Remand results sustained.]

Dated: December 11, 2017

James R. Cannon, Jr., Cassidy Levy Kent (USA) LLP, of Washington, DC, argued for Plaintiffs Shenyang Yuanda Aluminum Industry Engineering Co. and Yuanda USA Corporation. With him on the brief was Thomas M. Beline.

Kristen S. Smith, Arthur K. Purcell, and Michelle L. Mejia, Sandler, Travis & Rosenberg, P.A., of Washington, DC, for Consolidated Plaintiff Jangho Curtain Wall Americas Co., Ltd.

William E. Perry and Emily Lawson, Harris Bricken McVay LLP, of Seattle, WA, for Plaintiff-Intervenors Permasteelisa North America Corp., Permasteelisa South China Factory, and Permasteelisa Hong Kong Limited.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for the Defendant United States. With him on the brief were Chad A. Readler, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel was Scott D. McBride, Assistant Chief Counsel for Trade

Enforcement and Compliance, Office of the General Counsel, U.S. Department of Commerce, of Washington, DC.

David M. Spooner, Barnes & Thornburg, LLP, of Washington, DC, argued for Defendant-Intervenors Walters & Wolf, Architectural Glass & Aluminum Company, and Bagatelos Architectural Glass Systems, Inc. With him on the brief was Christine J. Sohar Henter.

Gordon, Judge: This action involves a challenge to a U.S. Department of Commerce ("Commerce") scope determination for the antidumping and countervailing duty orders (together, "Orders") on aluminum extrusions from the People's Republic of China ("PRC"). See Aluminum Extrusions from the PRC, 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011) (antidumping duty order) ("AD Order"); Aluminum Extrusions from the PRC, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (countervailing duty order) ("CVD Order"); see also Petition for the Imposition of Antidumping and Countervailing Duties Against Aluminum Extrusions from the PRC, PD 84[1] (Mar. 31, 2010), ECF No. 33 ("Petition").

Consolidated Plaintiffs Shenyang Yuanda Aluminum Industry Engineering Company and Yuanda USA Corporation (together, "Yuanda"); Permasteelisa North America Corp., Permasteelisa South China Factory, and Permasteelisa Hong Kong Limited (together, "Permasteelisa"); and Jangho Curtain Wall Americas Company, Ltd. ("Jangho," and collectively with Permasteelisa and Yuanda, "Plaintiffs"), challenge a scope ruling in which Commerce determined that Yuanda's unitized curtain wall, i.e., a complete curtain wall, unitized and imported in phases pursuant to a sales contract

---

[1] "PD" refers to the public administrative record, and "CD" refers to the confidential administrative record.

("subject merchandise"), was within the scope of the Orders. Aluminum Extrusions from the PRC, A-570-967 & C-570-968 (Dep't of Commerce Mar. 27, 2014) (final scope ruling on curtain wall units that are produced and imported pursuant to a contract to supply curtain wall), ECF No. 34-1 ("Yuanda Scope Ruling").

Before the court are Commerce's Final Results of Third Redetermination, ECF No. 133 ("Third Remand Results"), issued pursuant to Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 40 CIT ___, 181 F. Supp. 3d 1348 (2016). Plaintiffs challenge the Third Remand Results. See Consolidated Pls.' Joint Comments on Commerce's Third Remand Redetermination (Feb. 16, 2017), ECF No. 138 ("Pls.' Comments"); see also Def.'s Resp. to Comments Regarding Third Remand Redetermination (Apr. 3, 2017), ECF No. 143 ("Def.'s Resp."); Defendant-Intervenors' Response Comments to Pls.' Comments on Commerce's Third Results of Remand Redetermination (Apr. 14, 2017), ECF No. 150 ("Def.-Intervenors' Comments").

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012),[2] and 28 U.S.C. § 1581(c) (2012).

## I. Standard of Review and Legal Framework

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.") Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2017). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2017).

The language of the order is the "cornerstone" of a scope analysis and "a predicate for the interpretive process." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002). Commerce first considers the scope language of the order itself, the descriptions contained in the petition, and how the scope was defined in the

investigation and in the determinations issued by Commerce and the U.S. International Trade Commission. 19 C.F.R. § 351.225(k)(1) (2015); Duferco, 296 F.3d at 1097. If the (k)(1) factors are dispositive, Commerce issues a final scope ruling. See Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1071 (Fed. Cir. 2001).

## II. Discussion

Familiarity with the prior administrative and judicial proceedings in this action is presumed. The Orders cover, in pertinent part, "aluminum extrusions" such as "parts" for "curtain walls" to be "assembled after importation." AD Order, 76 Fed. Reg. at 30,650-51; CVD Order, 76 Fed. Reg. at 30,654. In litigation prior to this action, the U.S. Court of Appeals for the Federal Circuit sustained a separate Commerce scope determination that "curtain wall units" are "parts" of "curtain walls" within the scope of the Orders. See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 776 F.3d 1351, 1353 (Fed. Cir. 2015).[3]

In the scope proceeding here, Plaintiffs argued that curtain wall units, imported under a supply contract for a complete curtain wall, were partially assembled "subassemblies" of a complete curtain wall, and therefore excluded from the Orders as a "finished goods kit." AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. The Orders define a finished goods kit as "a packaged combination of parts that

---

[3] Defendant-Intervenors argue that the Federal Circuit's decision in Shenyang Yuanda controls the outcome here through either stare decisis or res judicata. See Third Remand Results at 39-40; Def.-Intervenors' Comments at 11-16. The court disagrees. In that action Commerce, the Court of International Trade, and the Federal Circuit did not address the issue of the finished goods kit exclusion and whether Plaintiffs' curtain wall units might satisfy the Petition example of a non-subject unassembled unitized curtain wall. Stare decisis and res judicata are simply inapplicable.

contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. The Orders may also exclude "'subassemblies' (i.e., 'partially assembled merchandise') . . . provided that they enter the United States as 'finished goods' or 'finished goods kits' and that the 'subassemblies' require no further 'finishing' or 'fabrication.'" Yuanda Scope Ruling at 8-9 (citing Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Initiation and Preliminary Scope Ruling on Side Mount Valve Controls," dated September 24, 2012, unchanged in Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, Final Scope Ruling on Side Mount Valve Controls, dated October 26, 2012). To be excluded the putative subassembly must (1) enter the United States meeting the definition of a subassembly (i.e., partially assembled merchandise) of a "finished goods kit" and (2) include all of the necessary parts to fully assemble a final finished good requiring no further finishing or fabrication.). Id.

Apart from a clever reimagining of its wall curtain units as a subassembly within a complete curtain wall imported pursuant to a supply contract, what made Plaintiffs' scope argument interesting was an exhibit in the Petition that was not identified or considered in the earlier scope litigation. Specifically, Exhibit I-5 to the Petition provides examples of finished goods kits that were not intended to be covered by the scope of the Orders.

**EXHIBIT I-5**

**SUMMARY OF SUBJECT AND NON-SUBJECT
MERCHANDISE PRODUCT TYPES AND EXAMPLES
Non-Subject Merchandise**

| Product Type | Product Examples |
|---|---|
| Unassembled products containing aluminum extrusions, *e.g.* "kits" that at the time of importation comprise all necessary parts to assemble finished goods | Shower frame kits, window kits, unassembled unitized curtain walls |

The parties continue to wrangle over the meaning and import of the example of "unassembled unitized curtain walls." Commerce maintains that such a beast must be imported as one Customs entry on a Customs Form 7501 (though possibly covering multiple shipments); Plaintiffs maintain that the example covers its supply contract for multiple entries over an extended period (18 months or more). See Third Remand Results at 17-18; Pls.' Comments at 14-15, 26. The court need not definitively resolve this issue other than to note that Petitioners identified a type of a unitized curtain wall in the Petition that it wanted to exclude from the Orders as a finished goods kit. Regardless of the possible meanings of Exhibit I-5, Plaintiffs' wall curtain units, imported pursuant to a supply contract for a complete curtain wall, must nevertheless satisfy the "subassemblies" test to qualify for exclusion from the Orders.

Commerce determined that Yuanda's entries failed the subassemblies test because Yuanda's own documents show that the individual curtain wall units do not contain all parts necessary to install them. Third Remand Results at 21-36. The "curtain

wall units are not ready to be installed upon importation 'as is,' such that they could satisfy the subassemblies test." Id. at 30. Commerce first noted that Yuanda's curtain wall units are subassemblies under the scope of the Orders. Id. at 21-24. Commerce then found that despite being subassemblies, they did not satisfy part two of the subassemblies test because the curtain wall units were not suitable for installation "as is," since they did not contain "all the necessary hardware and components for assembly" and "require[d] further 'finishing' or 'fabrication' prior to assembly." Id. at 27-36.

　　　Commerce's detailed analysis of contracts and other documents submitted by Yuanda shows that Yuanda's entries "cannot be incorporated 'as is' … without further components, fabrication and finishing." Id. at 34. For instance, Commerce noted that documents submitted by Yuanda, including exhibits to its scope request, included "technical drawings that show hangers, lock panels, shims and embeds which do not appear on the invoice or entry forms for the shipments in question." Id. at 29-30. Commerce identified several additional finishing procedures necessary to prepare the curtain wall units for installation into the curtain wall that further supported Commerce's conclusion that the subject merchandise could not pass part two of the subassemblies test. Id. at 30 ("In addition, the record reflects that in addition to the curtain wall units, (1) rubber, elastomeric lineal gaskets are used to waterproof and weatherproof the interlocking of adjacent curtain wall units and (2) the top of curtain wall unit frames must be adjoined with a dynamic silicone that spreads the gap between the two curtain wall units to assure a watertight installation. In addition, (3) aluminum trim is cut and punched to fit gaps between units and to accommodate for imperfections on and/or in between

units. The additional procedures listed above support Commerce's finding that curtain wall units are not ready to be installed upon importation 'as is,' such that they could satisfy the subassemblies test."); see also id. at 31-35 (identifying a multitude of other materials and finishing procedures necessary to complete installation of curtain wall units into a completed curtain wall).

Plaintiffs do not have much of a response to Commerce's factual findings for part two of the subassemblies test, and ultimately fail to persuade the court that Commerce's determination is unreasonable (unsupported by substantial evidence). See Pls.' Comments at 23-25. Plaintiffs contend that "record evidence established that Yuanda's curtain wall units are 'self-sealing,' meaning that they are merely hung onto pre-existing steel embeds in the concrete," but fail to cite such record evidence and fail to directly address Commerce's consideration of evidence that additional sealing and finishing was required. Id. at 24. Plaintiffs suggest that Commerce is improperly focusing on "installation procedures rather than whether all parts necessary to complete the curtain wall units were imported at the same time," however, Plaintiffs' argument is undercut by the fact that Commerce's consistent application of the subassemblies test has required that the subject merchandise be ready for installation "as is." See Third Remand Results at 27-36.

Plaintiffs also suggest that Commerce improperly focused on the installation of the curtain wall units into the completed curtain wall, rather than just on the allegedly finished nature of the curtain wall units themselves, but that argument ignores the premise of this scope inquiry. Namely, Commerce is determining whether curtain wall units, imported

<u>pursuant to a long term contract for a complete curtain wall</u>, are within the scope of the <u>Orders</u>. See Def.'s Resp. at 7-10 (responding to Plaintiffs' arguments about the product at issue in this proceeding, and explaining that "the only product at issue in the Third Remand Redetermination is a complete curtain wall that is produced and exported in 'parts' as curtain wall units and other parts pursuant to a long term contract").

Finally, Plaintiffs argue that Commerce's determination, that the subject merchandise cannot meet the subassemblies test as it requires further finishing before installation, is unsupported given "Commerce's lack of citation to contrary record evidence." Pls.' Comments at 24. To the contrary, Commerce relied upon and expressly cited relevant record information contradicting Plaintiffs' arguments as to the "finished" nature of the subject merchandise. See Def.'s Resp. at 27-29 (highlighting Commerce's reasoning predicated on record evidence in various parts of the <u>Third Remand Results</u> at 27-36, 66-78).

Yuanda's merchandise are subassemblies that are not capable of being installed "as is" without "additional finishing and fabrication." <u>Id.</u> Commerce reasonably concluded that the subject merchandise does not come within the finished goods kits exclusion and therefore falls within the scope of the <u>Orders</u>. <u>Id.</u>

### III. Conclusion

For the reasons stated above, the court sustains Commerce's <u>Third Remand Results</u>. Judgment will be entered accordingly.

<u>     /s/ Leo M. Gordon     </u><br>
Judge Leo M. Gordon

Dated: December 11, 2017
      New York, New York